UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: Ajax Integrated, LLC, | Case No. 14-30435<br>Chapter 11 |
| Debtor. | |

---

| | |
|---|---|
| Mary Lannon Fangio, in her official capacity<br>as trustee pursuant to 11 U.S.C. § 1104 of the<br>bankruptcy estate of Ajax Integrated, LLC, | Adv. Proc. No. 14-50012 |
| Plaintiff, | |
| v. | |
| DivLend Equipment Leasing, LLC, | |
| Defendant. | |

---

Appearances:

| | |
|---|---|
| Edward Y. Crossmore, Esq.<br>The Crossmore Law Office<br>115 West Green Street<br>Ithaca, NY 14850 | for Plaintiff |
| Manuel A. Arroyo, Esq. and R. John Clark, Esq.<br>Hancock Estabrook, LLP<br>500 AXA Tower I, 100 Madison Street<br>Syracuse, NY 13202 | for Defendant |

**Memorandum-Decision and Order**

By the amended complaint of Plaintiff Mary Lannon Fangio, chapter 11 trustee ("Plaintiff"

or "Trustee") of the Debtor estate of AJAX Integrated, LLC ("Debtor"), Trustee seeks to avoid

Defendant DivLend Equipment Leasing, LLC's ("Defendant's" or "DivLend's") unperfected

security interest in various items of equipment and vehicles pursuant to 11 U.S.C. § 544.[1] Since

---

[1] All sectional references are to Title 11 of the United States Code ("Bankruptcy Code").

the action was commenced, the parties have resolved their dispute except for thirty vehicles subject

to New York certificates of title ("Vehicles"). Both parties have moved for summary judgment

pursuant to Fed. R. Bankr. P. 7056 and DivLend has filed a separate motion for spoliation sanctions

("Spoliation Motion"), which matters are currently pending before the court.[2]

Trustee's position is that the governing lease between the parties is not a true lease but a

disguised secured transaction that granted DivLend a security interest in the Vehicles which

DivLend failed to perfect under applicable state law. Therefore, the Trustee contends that

Defendant's interest in the Vehicles is subject to the Trustee's § 544 avoidance powers.

DivLend concedes that it has an unperfected security interest in the Vehicles but argues

that it was prevented from perfecting its interest due to Debtor's refusal to sign New York notice

---

[2] The record consists of Plaintiff's ("Pl.") amended complaint (Doc. 19); Defendant's ("Def.") answer (Doc. 21); order designating Jay DeLine, Debtor's chief executive officer, as Debtor and compelling discovery (Doc. 47); Aff. of Att'y Edward Crossmore ("Crossmore"), sworn to on October 7, 2015, in support of Pl.'s motion for summary judgment ("Motion") and Exs. A-K (Doc. 48); Pl.'s statement of material facts ("Stmt. of Facts") (Doc. 49) ("*Pl.'s Stmt. of Facts*"); Aff. of DeLine, sworn to on September 17, 2015, in support of Pl.'s Motion (Doc. 50) ("*DeLine Aff.*"); Aff. of Michael Wieder, Debtor's chief financial officer, sworn to on September 25, 2015, in support of Pl.'s Motion (Doc. 51) ("*Wieder Aff.*"); suppl. Aff. of Crossmore, sworn to on October 7, 2015, in support of Pl.'s Motion and Exs. A-B (Doc. 52); Pl.'s memorandum of law ("Memo of Law") in support of Motion (Doc. 53); Def.'s Memo of Law in support of Def.'s cross motion for summary judgment ("Cross Motion") (Doc. 57) ("*Def.'s Mem. of Law in Supp. of Cross Motion*"); Def.'s Stmt. of Facts in support of Def.'s Cross Motion (Doc. 57-1) ("*Def.'s Stmt. of Facts*"); Aff. of Att'y Manuel A. Arroyo ("Arroyo"), sworn to on November 6, 2015, in support of Def.'s Cross Motion and Exs. A-F (Docs. 57-2 through 57-10); Aff. of DivLend employee Nathanael Falls, sworn to on November 5, 2015, and Exs. A-B (Docs. 57-11 through 57-13) ("*Falls Aff.*"); Aff. of DivLend employee Jordan Stegemoeller, sworn to on October 5, 2015, and Ex. A (Docs. 57-14 and 57-15) ("*Stegemoeller Aff.*"); Aff. of DivLend employee Courtney Allen, sworn to on September 6, 2015, and Exs. A-D (Docs. 57-16 through 57-20) ("*Allen Aff.*"); Def.'s response to Pl.'s Motion (Doc. 58) ("*Def.'s Response*"); Def.'s counterstatement of facts (Docs. 58-1); Aff. of Crossmore, sworn to on December 7, 2015, in opposition to Def.'s Cross Motion (Doc. 64); Pl.'s counterstatement of facts in opposition to Def.'s Cross Motion (Doc. 65); Pl.'s Memo of Law in opposition to Def.'s Cross Motion (Doc. 66); Def.'s reply Memo of Law (Doc. 68) ("*Reply*"); Aff. of Arroyo, sworn to on December 21, 2015, in support of Def.'s Reply and Exs. A-I (Docs. 69 through 69-3); Aff. of Att'y Andrew Stewart, sworn to on December 21, 2015, in support of Def.'s Reply and Exs. 1-4 (Docs. 69-4 through 69-8) ("*Stewart Aff.*"); Aff. of Anthony Martino, forensic examiner, sworn to on December 21, 2015, in support of Def.'s Reply and Exs. A-D (Doc. 69-9 and 69-10) ("*Martino Aff.*"); suppl. Aff. of Nathanael Falls, sworn to on December 21, 2015, in support of Def.'s Reply and Exs. A-F (Docs. 69-11 through 69-16); and Aff. of Stewart Sawyer, Diversified Lenders, Inc. employee, sworn to on December 21, 2015, in support of Def.'s Reply (Doc. 69-17). Also part of the record as discussed *supra*: Def.'s Spoliation Motion (Doc. 71); Def.'s Memo of Law in support of Def.'s Spoliation Motion (Docs. 70 and 70-1); Aff. of Arroyo, sworn to on December 21, 2015, in support of Def.'s Spoliation Motion (Doc. 70-2); Aff. of Crossmore, sworn to on January 14, 2016, in opposition to Def.'s Spoliation Motion (Doc. 81) ("*Crossmore Aff. in Opp's to Spoliation Motion*"); Aff. of Ruth Cito, Crossmore employee, sworn to on January 14, 2016, in opposition to Def.'s Spoliation Motion (Doc. 82) ("*Cito Aff.*"); Pl.'s Memo of Law in opposition to Def.'s Spoliation Motion (Doc. 83); and Debtor's opposition to Def.'s Spoliation Motion (Doc. 85).

of lien forms.[3] DivLend argues that the court should use its equitable powers to impose either an equitable lien or a constructive trust to defeat the Trustee's avoidance powers. Trustee responds that Defendant is not entitled to equitable relief due to DivLend's lack of due diligence in perfecting its interest.

DivLend additionally alleges in its Spoliation Motion that Debtor or Plaintiff's counsel intentionally destroyed evidence on Debtor's computer server during discovery. DivLend argues that the destruction of said evidence entitles DivLend to the benefit of the court drawing an adverse inference against the Trustee and in favor of DivLend on summary judgment.

This memorandum-decision incorporates this court's findings of fact and conclusions of law as permitted by Fed. R. Bankr. P. 7052. For the reasons set forth below, and considering any and all adverse inferences to be drawn from spoliation, the court denies Defendant's Cross Motion for summary judgment, awards summary judgment in favor of the Trustee and avoids Defendant's security interest in the Vehicles.

***Jurisdiction***

This court has jurisdiction to hear and determine this matter pursuant to 28 U.S.C. §§ 1334 and 157 (b) (2) (K) and (O), to which the parties have consented.

***Background Facts***

For the following statement of facts, the court notes at the outset that DivLend has objected to Crossmore's Affidavit in support of Plaintiff's Motion (Doc. 48) ("Affidavit") because it contains "factual assertions and legal arguments not based on personal knowledge." (*Def.'s Mem. of Law in Supp. of Cross Motion*, n. 4). The court takes judicial notice of the entire proceedings

---

[3] Although DivLend's answer asserts that it was perfected in the Vehicles, it has furnished no basis for that claim nor does the court independently find a basis to conclude that it was perfected. DivLend has seemingly abandoned its claim of perfection in the Cross Motion.

pursuant to Fed. R. Evid. 201. All facts relied upon in this memorandum-decision and legal arguments considered are found elsewhere in the record and, therefore, the court need not rely on the Affidavit.

It is undisputed that on May 20, 2013, DivLend loaned Debtor approximately $1.1 million pursuant to an "Equipment Lease Agreement" ("Agreement") that covered, *inter alia*, the thirty Vehicles that are the subject of the pending summary judgment motions. (*Def.'s Stmt. of Facts*, ¶¶ 1-3). The Agreement obligated Debtor to pay DivLend $35,838.18 a month for thirty-six months. (*Falls Aff.*, Ex. A, p. 7). The Agreement provides that Debtor "will execute financing statements or other documents which [DivLend] requests to evidence [DivLend's] and/or [Debtor's] interest in Equipment."[4] *Id.* at Ex. A, ¶ 8(M). The relevant events of default defined in the Agreement include: (i) failure to make monthly payments, (ii) the filing of a bankruptcy petition, or (iii) failure "to perform any other obligation at the time required" and continuing failure to do so "within thirty (30) days after receiving notice of the failure to perform." *Id.* at Ex. A, ¶ 10(A). Upon default, Defendant had, among other remedies, the ability to accelerate outstanding payments, and on ten days' notice, (i) enter Debtor's premises and remove and reclaim any of the Equipment, and (ii) sell or lease the Equipment in a public or private sale. Defendant could pursue Debtor for any deficiency, exercise any other right under the Agreement or bring an action at law or in equity to enforce its rights under the Agreement. *Id.* at Ex. A, ¶ 10(B). The choice of law provision states that the Agreement's terms shall be governed in accordance with the laws of Texas. *Id.* at Ex. A, ¶ 15(F).[5]

---

[4] The Equipment, as defined by the Agreement, covers the Vehicles at issue (*Falls Aff.*, Equipment Ex. A-1 of Ex. A).
[5] Texas law provides that "[t]he local law of the jurisdiction under whose certificate of title the goods are covered governs perfection." Tex. U.C.C. § 9.303(c). Since the Vehicles are covered by New York certificates of title, New York law governs perfection in the Vehicles.

Only after DivLend entered into the Agreement and advanced money to the Debtor did DivLend first inquire of the New York Department of Motor Vehicles how to add a lienholder to a New York certificate of title. (*Allen Aff.*, ¶ 2). More than a month later it mailed notice of lien forms concerning the Vehicles ("Notice of Lien Forms") to the Debtor with a request that they be signed and returned. *Id.* at ¶ 3. Debtor's receipt of the request is evidenced by a certified mail receipt dated July 2, 2013, signed by Debtor's chief financial officer, Michael Wieder ("Wieder" or "CFO"). *Id.* at Ex. B.

Debtor made the first seven out of thirty-six required monthly payments under the Agreement but then failed to make any further payments after December 17, 2013. (*Def.'s Stmt. of Facts*, ¶ 6). An involuntary petition was filed against the Debtor on March 24, 2014. Prior to the bankruptcy filing, Defendant obtained the original certificates of title for the Vehicles. (*Falls Aff.* ¶ 9). However, during the almost nine-month period that Debtor had the Notice of Lien Forms in its possession, Debtor never signed nor returned them to Defendant. (*Def.'s Stmt. of Facts*, ¶ 14).

The parties dispute the efforts taken by Defendant to enforce its right to have the Notice of Lien Forms signed and returned. Defendant called Debtor at least six times to request that the Notice of Lien Forms be signed and returned. (*Allen Aff.*, ¶¶ 5-8 and *Stegemoeller Aff.*, ¶¶ 2-5). DivLend employee Courtney Allen attests that she called Debtor on July 2, 12, and 18, 2013, and spoke with a representative to inquire about the Notice of Lien Forms. (*Allen Aff.*, ¶¶ 5-8). DivLend employee Jordan Stegemoeller attests that he called and spoke with Debtor's CFO at least twice in August 2013 to inquire about the same. (*Stegemoeller Aff.*, ¶ 3). Stegemoeller claims that during both calls Wieder indicated that the Notice of Lien Forms would be signed and returned. *Id.* On at least one occasion, Stegemoeller states that he called and spoke with Debtor's chief executive officer, Jay DeLine ("CEO" or "DeLine"), regarding the unsigned Notice of Lien Forms. *Id.* at ¶

5

4. Stegemoeller claims that DeLine made the same promise as Wieder—that the signed forms would be forthcoming. *Id.* Stegemoeller also claims that periodically thereafter he or someone else in DivLend's office would call or send an email to Debtor to inquire about the status of the unsigned Notice of Lien Forms. *Id.* at ¶ 5. However, no emails are attached to Stegemoeller's Affidavit. DivLend phone records evidence calls to the Debtor in July-August 2013 but no phone records for any other month are included.[6] Conversely, both Jay DeLine and Michael Wieder claim to have no recollection of any phone calls from Stegemoeller or Allen or of any alleged follow-up requests by Defendant to have the Notice of Lien Forms signed and returned. (*DeLine Aff.*, ¶¶ 25-26 and *Wieder Aff.*, ¶¶ 4-5, respectively).

In late January 2014, Debtor executed a bill of sale to sell substantially all of its assets to a third party, the proceeds of which were to be remitted to DivLend to satisfy its lien. (*Falls Aff.*, ¶ 14). The sale fell through the following month when Debtor became subject to a state court receivership. *Id.* at ¶ 17. About the same time, DivLend retained counsel to collect payments due under the Agreement and locate the underlying collateral. (*Stewart Aff.*, ¶3 and 5). In mid-March 2014, counsel prepared papers to commence an action for turnover in Texas. *Id.* at ¶ 11. Defendant also engaged counsel to determine if its security interest in the Vehicles could be perfected without Debtor's signature on the Notice of Lien Forms. (*Stewart Aff.*, ¶ 13). Before Defendant took any further action, this case was filed. *Id.* at ¶ 15. The Order for Relief followed on June 4, 2014, and the court appointed Plaintiff chapter 11 trustee on November 17, 2014. The Vehicles have since

---

[6] The only phone records submitted are for the months of July and August 2013. The July records, which include the first two days of August, are attached as Ex. C to Allen's Affidavit and the August records are attached as Ex. A to Stegemoeller's Affidavit. The phone records reflect a total of eighteen phone calls placed to Debtor (eight in July and ten in August). Allen and Stegemoeller, however, only specifically address the approximately six calls placed to Debtor during those two months.

been liquidated pursuant to court order and the Trustee is holding $954,364.53 in escrow, subject to the outcome of this proceeding. (*Pl.'s Stmt. of Facts*, ¶ 8).

### Underlying Facts Pertaining to Spoliation Motion

On October 9, 2015, Defendant subpoenaed Debtor's computer server ("Server"). (*Arroyo Aff.*, Ex. C). Based on Michael Wieder's deposition testimony, Defendant believed the Server contained all files related to the Debtor and, specifically, the files of Debtor's CEO, Jay DeLine. *Id.* at ¶¶ 7-8. The Server was produced by DeLine to Trustee's counsel the morning of October 16, 2015. (*Crossmore Aff. in Opp'n to Spoliation Motion*, ¶ 8). It was then delivered to DivLend's counsel later that morning. *Id.* Per Ruth Cito, legal secretary to Trustee's counsel, the Server was at the Crossmore law office for no more than an hour and a half. (*Cito Aff.*, ¶ 8). Neither Attorney Crossmore nor any of his employees turned the Server on or attempted to access any data from the Server. (*Crossmore Aff. in Opp'n to Spoliation Motion*, ¶ 9). Trustee's counsel had earlier instructed Debtor's CEO about the importance of maintaining the integrity of all Debtor's records. *Id.* at ¶ 5.

When Defendant's counsel turned the Server on, the folder on the Server labeled "Jay.DeLine" was completely empty. (*Arroyo Aff.*, ¶ 10). Forensic analysis of the Server revealed that the Server was completely turned off and was not used from March 9, 2015 until October 14, 2015, just two days prior to production. (*Martino Aff.*, ¶ 18). According to Anthony Martino, a senior forensic examiner retained by Defendant's counsel, various files were either deleted or attempted to be deleted from the Server one day prior to production, rather than just opened or altered. *Id.* at ¶ 8. Martino identified six .pdf files and an entire folder measuring 454 megabytes in size that were either deleted or attempted to be deleted on October 15, 2015. *Id.* at ¶¶ 9-11. The contents of the files, however, cannot readily be identified except for the fact that the six .pdfs

7

were from the "mike.wieder" folder, not the "jay.deline" folder. *Id.* at Ex. A. Martino states that

he could attempt to extract these files from the Server if requested to do so but that such extraction

poses the risk that the files, if not already corrupted, may become corrupted and unrecoverable as

a result. *Id.* at ¶16.

**Summary Judgment Standard**

Fed. R. Civ. P. 56, as incorporated by Fed. R. Bankr. P. 7056, states that summary judgment

shall be granted "if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Brown v. Eli Lilly &*

*Co.*, 654 F.3d 347, 358 (2d Cir. 2011). The moving party must support its assertion by citing to

particular materials in the record which may include "depositions, documents, electronically stored

information, affidavits or declarations, stipulations…, admissions, interrogatory answers, or other

materials." *Id.* Further, an affidavit in support of a motion for summary judgment "must be made

on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant

or declarant is competent to testify on the matters stated." *Id.* "Where the moving party

demonstrates 'the absence of a genuine issue of material fact,' *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986), the opposing party must come forward with specific evidence demonstrating the

existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358 (citing *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

On summary judgment, the court must "resolve all ambiguities and draw all permissible

factual inferences in favor of the party against whom summary judgment is sought." *Terry v.*

*Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (citing *Stern v. Trustees of Columbia Univ.*, 131 F.3d

305, 312 (2d Cir. 1997)). The court must also consider the burden of proof the moving party would

face at trial and award judgment against a party who has failed to make a sufficient showing on an

essential element of a dispositive issue on which it shoulders the burden. *Celotex Corp.*, 477 U.S. at 322-323. The burden of proof to establish a constructive trust is clear and convincing evidence.[7] *In re MBM Entm't, LLC*, 531 B.R. 363, 414 (Bankr. S.D.N.Y. 2015).

Although disputed issues of fact may exist on the record, the court does not find a genuine dispute as to any material fact which, as a matter of law, would preclude the granting of summary judgment in Trustee's favor.

## Discussion

Defendant admits the parties' Agreement involves a secured transaction which granted Defendant a security interest in the Vehicles.[8] The issue, therefore, is whether the court should recognize an equitable remedy that would defeat the Trustee's avoidance powers.

## Trustee's Strong Arm Powers

Under the "strong arm" provision of § 544 (a)(1), a bankruptcy trustee has the status of a hypothetical judgment lien creditor as of the petition date. With this status, the trustee is "entitled to the benefits derived from relevant state laws governing the priority of liens." *In re Cerrato*, 504 B.R. 23, 31 (Bankr. E.D.N.Y. 2014) (citing *In re Kors, Inc.*, 819 F.2d 19, 22–23 (2d Cir.1987)). Under New York Uniform Commercial Code § 9-317(a), an unperfected security interest in goods is subordinate to that of a lien creditor which includes a bankruptcy trustee. N.Y. U.C.C. §§ 9-

---

[7] As discussed *infra*, the imposition of a constructive trust is the only equitable remedy sought that could defeat the Trustee's § 544 avoidance powers.

[8] Although entitled "Equipment Lease Agreement," Defendant concedes in its Cross Motion that the Agreement is not a lease, but rather grants Defendant a security interest in the subject Vehicles. In Defendant's response to Plaintiff's Motion, Defendant claims it has an "undisputed security interest" in the Vehicles. (*Def.'s Response*, p. 2). Per Defendant's Cross Motion, "[p]laintiff admits that the Debtor and Defendant both intended to vest in DivLend a security interest [in], *inter alia*, the thirty (30) vehicles that are the subject of this action. Indeed, such unequivocally appears from the language of the parties' agreement and the circumstances attendant to the parties' relationship." (*Def.'s Mem. of Law in Supp. of Cross Motion*, p. 1). And, per Defendant's Stmt. of Facts in support of its Cross Motion, Debtor and Defendant intended to "grant and in fact granted to Defendant a security interest in the Subject Vehicles." (*Def.'s Stmt. of Facts*, ¶ 4). Accordingly, this memorandum-decision does not address whether the Agreement was a true lease or a disguised secured transaction, as the latter is conceded by Defendant.

317(a) and 9-102(52) (" 'Lien Creditor' means [among other things]…a trustee in bankruptcy from the date of the filing of the petition."). Therefore, pursuant to § 544, a bankruptcy trustee may avoid, for the benefit of general unsecured creditors of the estate, transfers of a debtor's property that were not properly perfected prior to the petition date.

### Perfection of Vehicles Covered by New York Certificates of Title

Since the Vehicles are covered by New York certificates of title, New York law governs perfection.[9] Under New York law, the perfection of security interests in motor vehicles covered by certificates of title is governed by both the New York Uniform Commercial Code ("N.Y. U.C.C.") and the Uniform Vehicle Certificate of Title Act, codified at Article 46 of the Vehicle and Traffic Law ("N.Y. Veh. and Traf. Law"). Under N.Y. U.C.C. § 9-311(b), "for goods covered by a certificate of title, a security interest in property subject to a statute, regulation, or treaty…may be perfected *only* by compliance with those requirements." N.Y. U.C.C. § 9-311(b) (emphasis added). N.Y. Veh. and Traf. Law § 2118 is the governing statute and provides that a security interest is perfected in a motor vehicle covered by a certificate by delivering to the commissioner of motor vehicles (i) the existing certificate of title, if any, (ii) a notice of lien form, also known as a Form MV-900, which must be signed by the owner/borrower, and (iii) the required fee. N.Y. Veh. & Traf. Law § 2118; N.Y. Comp. Codes R. & Regs. Tit. 15, § 20.15. The statute does not condition perfection on the appearance of the lienholder's name on the issued certificate of title, but rather by compliance with the prescribed filing requirements accompanied by the required fee. *In re Beaudoin*, 160 B.R. 25, 30 (Bankr. N.D.N.Y. 1993).

Defendant was unaware of the above requirements at the time it advanced the $1.1 million to Debtor on May 20, 2013. Subsequently, Defendant inquired of the New York Department of

---

[9] *See* footnote 5.

Motor Vehicles how to add a lienholder to a New York Certificate of Title. It was not until June 26, 2013, that Defendant sent the Notice of Lien Forms to Debtor with the express request that Debtor sign and return them.

As previously noted, Debtor never signed nor returned the Notice of Lien Forms to Defendant. Pursuant to N.Y. Veh. & Traf. Law § 2119, when an owner creates a security interest in a vehicle, that owner "shall, if the lienholder so requests, execute [an] application…to name the lienholder on the certificate" and cause such to be delivered to the lienholder. Debtor failed to fulfill its affirmative obligation under the statute as well as the terms of the Agreement. As a result, DivLend never delivered the forms to the New York Commissioner of Motor Vehicles. Defendant, Admittedly, Defendant is not perfected in the Vehicles as a matter of law. [10]

### Imposition of an Equitable Remedy to Defeat Trustee's Strong Arm Powers

DivLend asks the court to impose an equitable remedy to defeat the Trustee's inherent strong arm powers and specifically requests recognition of an equitable lien or a constructive trust. For this relief, DivLend seeks to have New York law apply. (*Def.'s Mem. of Law in Supp. of Cross Motion*, n.7). The estate's interest in property is informed by state law. *In re Howard's Appliance Corp.*, 874 F.2d 88, 93 (2d Cir. 1989). The Vehicles are covered by New York certificates of title. Defendant argues its entitlement to equitable relief due to its would-be perfection under New York law but for Debtor's failure to sign and return the Notice of Lien Forms. Therefore, the court looks to New York law to determine Defendant's equitable remedies. [11]

---

[10] In a footnote, Defendant cites Debtor's failure to comply with N.Y.'s Veh. and Traf. Law § 2119 as a basis to suggest Debtor's commission of a misdemeanor under N.Y. Veh. and Traf. Law §§ 2130(b)(2) and 36:6. (*Def.'s Mem. of Law in Supp. of Cross Motion*, n.3). The former statute, § 2130(b)(2), addresses the failure to mail and deliver a certificate of title or application to the New York Department of Motor Vehicles ("DMV"). Debtor's obligation was to DivLend, not to the DMV. The latter statute, § 36:6, deals with the transfer of a certificate of title. DivLend's reliance on these statutes is misplaced as they are inapplicable to the record before the court.

[11] Plaintiff in its Memo of Law in support of its Motion suggests that Texas, Oklahoma, or Pennsylvania law potentially applies. Even were this so, the court concludes that the result would not be different. DivLend would still not be entitled to equitable relief for the reasons discussed *infra*.

### *Imposition of an Equitable Lien*

An equitable lien arises where there is strict proof of an intention to create a lien from the language of the controlling agreement and underlying circumstances and when "a secured creditor is prevented from perfecting its interest by an uncooperative Debtor." *In re O. P. M. Leasing Servs., Inc.*, 23 B.R. 104, 119 (Bankr. S.D.N.Y. 1982). On the undisputed facts of record, Defendant is entitled to and the court recognizes an equitable lien in favor of DivLend in the Vehicles.

An equitable lien, however, is not enough to subvert a trustee's strong arm powers. *Id.* at 120. The legislative history of the Bankruptcy Code makes clear that Article 9 of the Uniform Commercial Code "treats equitable liens as 'unperfected security interests which the trustee can in any case set aside.' " *Id.* (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 209 (1977)). Further, N.Y. U.C.C. § 9-317(a) clearly states that an unperfected security interest is subordinate to a lien creditor's interest—which includes that of a bankruptcy trustee. N.Y. U.C.C. §§ 9-317(a) and 9-102(52); *Cherno v. Dutch American Mercantile Corp., (In re Itemlab, Inc.)*, 353 F.2d 147, 153 (2d Cir.1965) ("[T]he applicable law of New York...defer[s] the priority of [equitable] liens to subsequent legal liens of judgment creditors and, therefore, to the claims of the trustee in bankruptcy."). Therefore, Defendant's equitable lien in the Vehicles is subordinate to the judgment lien of the Plaintiff Trustee.

### *Imposition of a Constructive Trust*

As has been noted by the United States Supreme Court, property of the estate "exclude[s] property of others held by the debtor in trust at the time of the filing of the petition." *U.S. v. Whiting Pools, Inc.*, 462 U.S 198, 205 n.10 (1983). Pursuant to Bankruptcy Code § 541(d), property subject to a constructive trust does not become part of the bankruptcy estate and the equitable interest of

the beneficiary of that trust takes priority over other creditors. *In re Flanagan*, 503 F.3d 171, 180 (2d Cir. 2007). This priority includes a superior interest to that of a trustee in bankruptcy. *In re Howard's Appliance Corp.*, 874 F.2d 88, 93 (2d Cir. 1989). "The reason for this priority is clear: but for the debtor's misconduct, the trust beneficiary would have perfected [its] security interest in the rest of the trust and thus would have prevailed over the debtor as well as the [trustee in bankruptcy]." *Id.*

In order to obtain the equitable remedy of a constructive trust under New York law, the party seeking the remedy must generally prove four elements. These four elements are: "(1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer made in reliance on that promise; and (4) unjust enrichment." *In re Koreag, Controle et Revision S.A.*, 961 F.2d 341, 352 (2d Cir. 1992) (citing *Bankers Sec. Life Ins. Soc'y v. Shakerdge*, 49 N.Y.2d 939, 940 (1980). Of the four elements, unjust enrichment is the most important. *In re First Cent. Fin. Corp.*, 377 F.3d 209, 212 (2d Cir. 2004); *In re Koreag, Controle et Revision S.A.*, 961 F.2d at 354 (stating that unjust enrichment constitutes the "key factor" in determining whether a constructive trust should be imposed).

An unjust enrichment claim under New York law requires proof of three basic elements: "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004) (citing *Clark v. Daby*, 751 N.Y.S.2d 622, 623 (2002)). The court never reaches an analysis of these elements as unjust enrichment is an equitable claim that cannot be established when the party seeking a constructive trust had an adequate remedy at law. *See Norris v. Grosvenor Mktg.*, 803 F.2d 1281, 1287 (2d Cir.1986) (collecting cases); *see also In re First Cent. Fin. Corp.*, 377 F.3d at 215. "[W]here a valid

13

agreement controls the rights and obligations of the parties, an adequate remedy at law typically exists." *In re First Cent. Fin. Corp.*, 377 F.3d at 215. Whether that remedy is able to make the moving party whole again in the context of a bankruptcy is of no matter. *Id.* at 216. "An equitable claim cannot proceed where the plaintiff has had and let pass an adequate alternative remedy at law." *Norris v. Grosvenor Mktg.*, 803 F.2d at 1287.

The Agreement provided Defendant with an adequate remedy at law at both the outset of the transaction and at the time Debtor failed to sign and return the Notice of Lien Forms. DivLend had the right to require Debtor's signature on the Notice of Lien Forms as a condition to closing the loan. Failing to do so, upon Debtor's default Defendant had a right, among other remedies, to (i) accelerate outstanding payments, (ii) enter Debtor's premises on notice and remove and reclaim the Vehicles, (iii) sell or lease the Vehicles on notice in a public or private sale, (iv) pursue Debtor for any deficiency, or (v) bring an action at law or in equity to enforce its rights under the Agreement. DivLend did not avail itself of these remedies. Defendant's response that it was engaged in locating its collateral and was contemplating collection or a lawsuit is not persuasive in this court's judgment to warrant the relief sought. The court will not now impose an equitable remedy where DivLend—with a lead time of several months to do so—let pass an adequate alternative remedy at law.

The court is mindful that the imposition of a constructive trust is fundamentally at odds with the general goals of the Bankruptcy Code which the Second Circuit has explained are:

> to place the property of the bankrupt, wherever found, under the control of the court, for equal distribution among the creditors, and to protect the creditors from one another. But by creating a separate allocation mechanism outside the scope of the bankruptcy system, the constructive trust doctrine can wreak ... havoc with the priority system ordained by the Bankruptcy Code.... [W]e believe it important to carefully note the difference between constructive trust claims arising in bankruptcy as opposed to those that do not, as the equities of bankruptcy are not the equities of the common law.

14

*Superintendent of Ins. for N.Y. v. Ochs (In re First Cent. Fin. Corp.)*, 377 F.3d 209, 217-18 (2d

Cir.2004). Therefore, constructive trusts are viewed as "anathema to the equities of bankruptcy"

since they essentially punish competing creditors rather than the "offending debtor." *In re*

*Flanagan*, 503 F.3d 171, 182 (2d Cir. 2007) (quoting *In re Omegas Grp., Inc.*, 16 F.3d 1443, 1452

(6th Cir. 1994)). Nevertheless, courts have imposed this remedy but only when presented with a

"compelling reason." *In re Flanagan*, 503 F.3d at 182 (Despite Debtor's wrongful conduct, the

court refused to impose a constructive trust because, in part, neither debtor's estate nor general

unsecured creditors were unjustly enriched).

  The court notes that many of the cases relied upon by DivLend for imposing a constructive

trust are inapposite and readily distinguishable from the facts before the court. For example, in

*Howard's Appliance Corp.*, 874 F.2d 88 (2d Cir. 1989), the court imposed a constructive trust

because the secured creditor had properly perfected its interest in the collateral in New York, and

only became unperfected after Debtor moved the collateral to New Jersey without providing notice

to the the secured creditor. That creditor's unperfected status was *solely* attributable to Debtor's

misconduct and not to any lack of due diligence by the creditor. In another case cited by DivLend,

the court addressed the status of an equitable lien and found that "even if an equitable lien were

created, it would nevertheless be subordinate to the subsequent legal lien of a judgment creditor

[and a bankruptcy trustee]." *In re O.P.M. Leasing Servs., Inc.*, 23 B.R. 104, 119-20 (Bankr.

S.D.N.Y. 1982). In *Trim-Lean Meat Products, Inc.*, 10 B.R. 333, 336 (D. Del. 1981), an equitable

lien case outside the purview of New York law, the court refused to grant creditor equitable relief

because it failed to do all it could to achieve perfection of its security interest, a case more

supportive of the Trustee's position than that of DivLend. *Matter of Papeleras Reunidas, S.A.*, 92

B.R. 584 (Bankr. E.D.N.Y. 1988) stands for the proposition that a lienholder's interest should not

be avoided where the lienor did all in its power to perfect the lien and debtor's actions prevented

such perfection. Since DivLend failed from the outset to take the necessary steps to insure its

perfection in the Vehicles, it is not entitled to the same relief. [12]

### DivLend's Lack of Due Diligence Precludes Equity's Operation

It is well established under New York law that a party seeking equitable relief must himself

do equity. *423 S. Salina St., Inc. v. City of Syracuse*, 68 N.Y.2d 474, 483 (1986). "A plaintiff is

equitably bound to do equity as a condition precedent to obtaining equitable relief." 55 N.Y. Jur.

2d Equity § 94. Similarly, the Second Circuit has held that "in order to obtain the requested

equitable relief, a plaintiff must show 'the absence of fault or negligence' on his own part."

*Cresswell v. Sullivan & Cromwell,* 922 F.2d 60, 71 (2d Cir.1990) (internal citations omitted).

The record is devoid of DivLend exercising the basic precautions of a prudent lender as

evidenced by its failure to act and the lateness and ineffectiveness of the actions it took. Defendant

was ignorant as to how to perfect its interest in the Vehicles at the time it loaned Debtor $1.1

million. As a prudent lender, had DivLend initially done its due diligence prior to making the loan,

DivLend could have required that Debtor sign the Notice of Lien Forms before advancing the $1.1

million. *See In re Millivision, Inc.*, 474 F.3d 4, 5 (1st Cir. 2007) (where the First Circuit agreed

that "the bankruptcy court aptly noted appellants could have avoided their predicament by the

simple expedient of recording (thus perfecting) their security interest in [Debtor's] assets prior to

advancing the $500,000").[13]  Then, Defendant failed to diligently exercise its rights under the

Agreement. It never declared a default after requesting for two months that the Notice of Lien

---

[12] These are a small sample of the cases referenced by DivLend which do not support granting equitable relief in its favor.

[13] The court recognizes that in *Millivision, Inc.*, the sole responsibility was on the lender to perfect its interests, not the Debtor. Nevertheless, the court finds that Defendant should have been more diligent and could have avoided the entire situation by requiring Debtor to fill out the Notice of Lien Forms prior to advancing the $1.1 million, particularly when it was DivLend that controlled the terms on which the money was advanced.

Forms be signed and returned. Defendant waited until March 2014—ten months after loaning $1.1 million—to engage a law firm to determine whether perfection in the Vehicles could be obtained without Debtor's signature on the Notice of Lien Forms. The fact that Defendant was still unsure how to properly perfect its interest in the Vehicles is an inexplicable failure. These deficiencies by DivLend do not equate with the due diligence necessary for this court to impose a constructive trust. Defendant's arguments that its course of action (or inaction) was prudent because it was (i) consistently assured that the Notice of Lien Forms would be signed, (ii) was receiving monthly payments, or (iii) hoping to get paid from an impending sale are unavailing. The purpose of perfecting one's secured status is to retain one's priority over subsequent creditors claiming rights in the same collateral, including a bankruptcy trustee, which should always be contemplated at the outset of any commercial transaction. The court finds that Defendant failed to act diligently to protect its interest.

Defendant argues in a footnote that even if the court finds that Defendant discharged less than diligent efforts to perfect its interest, the doctrine of *in pari delicto* warrants summary judgment in Defendant's favor.[14] The court disagrees. *In pari delicto* is an equitable defense that stands for the principle that "one wrongdoer may not recover against another." *In re Bernard L. Madoff Inv. Sec. LLC.*, 721 F.3d 54, 63 (2d Cir. 2013). As recited in the case cited by DivLend, "[t]he *in pari delicto* doctrine is 'rooted in the common-law notion that a plaintiff's recovery may be barred by his own wrongful conduct.' " *In re Lehr Constr. Corp.*, 528 B.R. 598, 607 (Bankr. S.D.N.Y. 2015). However, this action is brought not on Debtor's behalf but pursuant to the Trustee's statutory avoidance powers. Therefore, the court finds that the doctrine of *in pari delicto* does not apply. *See In re Nat'l Century Fin. Enterprises, Inc.*, 783 F. Supp. 2d 1003, 1015 (S.D.

---

[14] *Def.'s Mem. of Law in Supp. of Cross Motion*, n. **8.**

Ohio 2011) (noting that avoidance claims brought by the trustee are not subject to the *in pari delicto* defense because those claims are brought under the trustee's statutory avoidance powers, not on debtor's behalf); *see also In re David Cutler Indus., Ltd.*, 502 B.R. 58, 72 (Bankr. E.D. Pa. 2013). Where, as here, the Trustee seeks to enhance the value of the estate by avoiding DivLend's security interest, Debtor's conduct may not be imputed to the Trustee.

> The trustee in bankruptcy stands not only in the shoes of the bankrupt he fits as well into the overshoes of the bankrupt's creditors. When exercising the avoidance power as a representative of the estate, the trustee is vested with the rights of creditors and is not limited to the rights of the bankrupt. Accordingly, even if the creditor whose interest the trustee seeks to avoid has a valid defense against the debtor, it does not follow that an action taken by the trustee acting as the representative of [the debtor's] *creditors* must similarly fail. When a trustee seeks to enhance the value of the estate property, the party seeking to prevent avoidance of its interest may not raise any misconduct or malfeasance by the debtor as a defense. The trustee, in his capacity as trustee, is not estopped by the debtor's misconduct.

*In re Cooley*, 2001 WL 135822, at *3 (W.D.N.Y. Feb. 13, 2001) (internal quotations and citations omitted).

### *Spoliation*

The Second Circuit has defined spoliation as the "destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). The court may impose sanctions for spoliation under either Fed. R. Civ. P. 37(b)(2) when the spoliation violates a court order or pursuant to the court's "broad inherent power" to impose sanctions in response to "abusive litigation practices" to "protect the administration of justice." *Penthouse Int'l., Ltd. v. Playboy Enter., Inc.*, 663 F.2d 371, 386 (2d Cir. 1981).

DivLend seeks sanctions for alleged spoliation based upon the Debtor's production of its Server pursuant to court order and a forensic analysis that shows that computer files were deleted

18

or attempted to be deleted from the Server one day prior to its production.[15]   In its Cross Motion,

DivLend requests a Fed. R. Civ. P. 37(b) adverse inference that the deleted computer files related

directly to either (i) DivLend's efforts to have the Notice of Lien Forms signed or (ii) Debtor's

deliberate refusal to sign them.   In the Spoliation Motion, DivLend asks for the more extreme

sanctions that summary judgment be precluded, Plaintiff's pleading be stricken or the action

dismissed, or that spoliation be treated as contempt.   The court shall consider those aspects of the

Spoliation Motion as they bear upon the merits of the pending motions for summary judgment.

The harsher sanctions—particularly the preclusion of summary judgment, the striking of

Plaintiff's pleading and dismissal—are drastic remedies that should only be imposed in extreme

circumstances, after the consideration of less severe alternatives, including the adverse inference

requested by DivLend. *See West v. Goodyear Tire & Rubber Co.*, 167 F.3d at 779 (specifically

discussing the sanction of dismissal).   "[A] court should always impose the least harsh sanction

that can provide an adequate remedy." *Pension Comm. of Univ. of Montreal Pension Plan v. Banc

of Am. Sec.*, 685 F. Supp. 2d 456, 469 (S.D.N.Y. 2010). "The choices include—from least harsh

to most harsh—further discovery, cost-shifting, fines, special jury instructions, preclusion, and the

entry of default judgment or dismissal (terminating sanctions)." *Id.*

A party seeking sanctions for spoliation must establish three elements: "(1) that the party

having control over the evidence had an obligation to preserve it at the time it was destroyed; (2)

that the records were destroyed with a 'culpable state of mind' and (3) that the destroyed evidence

---

[15] A federal court may impose sanctions under Fed. R. Civ. P. 37(b)(2)(A), as incorporated by Fed. R. Bankr. P. 7037, when a party spoliates evidence in violation of a court order such as the one issued in this case at Doc. 47. *West v. Goodyear Tire & Rubber Co.*, 167 F.3d at 779. These sanctions may include: "(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination." Fed. R. Civ. P. 37.

was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 430 (S.D.N.Y. 2004).

DivLend claims that its rights in the Vehicles should prime the Trustee's by means of an equitable lien or a constructive trust. For the reasons previously discussed, an equitable lien is not enough to prevail over the Trustee's strong arm powers and a constructive trust is not an available remedy where, as here, DivLend had an adequate remedy at law under the Agreement and was not duly diligent in its efforts to perfect its interest. What Debtor did or did not do is irrelevant to the analysis as Debtor's conduct cannot be imputed to the Trustee when the Trustee is acting pursuant to its statutory avoidance powers, and not on Debtor's behalf.[16] *In re Cooley*, 2001 WL 135822, at *3.

Therefore, even if the court were to accept DivLend's argument and grant the adverse inference that the deleted files related to Defendant's efforts to have the Notice of Lien Forms signed or provided evidence of Debtor's conscious refusal to sign them, such evidence would not alter the court's decision not to impose a constructive trust.[17] The evidence is not "relevant" because with it, the Defendant would be in no better position to defeat the inherent powers of the Trustee. Under this analysis and for purposes of deciding the pending Motion for Summary

---

[16] Additionally, the court finds that Trustee's counsel, as alleged in DivLend's Spoliation Motion, had no independent hand in any wrongdoing. Trustee's counsel had earlier advised Debtor's CEO Mr. DeLine about the importance of maintaining the integrity of all Debtor's records. The Server was not at the Crossmore law office for more than an hour and a half and during that time, neither Attorney Crossmore nor any of his employees attempted to turn on or access any data from the Server.

[17] This court has doubts that any deleted files related to DivLend's efforts to have the Notice of Lien forms signed. If Defendant had sent any emails or made any other written requests to Debtor, it had access to its sent correspondence and could have produced what was sent as part of the record. However, Defendant presents no evidence of its attempts other than the original letter request and the no less than six phone calls sworn to by two DivLend employees. Defendant's best case scenario, as pointed out by Attorney Arroyo at oral argument on the Spoliation Motion, would be that a deleted file contained a communication from Jay DeLine himself, expressing his intent not to sign the Notice of Lien Forms. However, as discussed *supra*, even that would not have materially altered the outcome of this decision.

Judgment and Cross Motion, DivLend is not entitled to an adverse inference or any of the other more extreme sanctions it seeks.

The court is not blind to the fact that evidence may have been tampered with in this case. Defendant's allegation of spoliation is a matter which the court takes seriously. Accordingly, the court will enter a separate order setting an evidentiary hearing on the Spoliation Motion to consider further any appropriate sanctions that may be warranted.[18]

### *Conclusion*

Defendant had an adequate remedy at law with respect to the Vehicles. This, coupled with its own lack of due diligence, does not merit this court's imposition of an equitable remedy that would defeat the Plaintiff Trustee's strong arm powers. This is so regardless of Debtor's failure to sign the Notice of Lien Forms or any inferences to be drawn from spoliation. Since there exists no genuine dispute as to any material fact, Plaintiff is entitled to judgment as a matter of law. Accordingly, Plaintiff's Motion for Summary Judgment is granted and Defendant's Cross Motion for Summary Judgment is denied. A separate judgment shall issue in accordance with Fed. R. Civ. P. 58.[19]

So Ordered.

Dated:  March 23, 2016
         Syracuse, New York

Margaret Cangilos-Ruiz
United States Bankruptcy Judge

---

[18] The outcome of the separate spoliation hearing has no bearing on this court's findings and conclusions contained in this memorandum-decision and order as to the granting of summary judgment in favor of the Trustee.

[19] Fed. R. Bankr. P. 7058 incorporates Fed. R. Civ. P. 58.